UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DOMINIQUE TAYLOR,

                    Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

                    Defendant.

**DECISION AND ORDER**

1:18-CV-00377(JJM)

---

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 12].[2] The parties have consented to my jurisdiction [14]. Having reviewed their submissions [8, 12, 13], the action is remanded to the Commissioner for further proceedings.

**BACKGROUND**

        In May 2014 plaintiff, who was 28 years old, applied for DIB and SSI, alleging a disability onset date of April 8, 2014, due to "back problems, nerve problems in right foot and leg", and "slipped and bulging discs in back", arising from a workplace injury.[3] Administrative record [6], pp. 161, 229-42, 263, 309. After plaintiff's applications were denied (id., pp. 163-

---

[1]     On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, and is automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[3]     While working as a personal care assistant, plaintiff was "rolling a patient away from herself" and "felt a 'crunching' sensation in her back". [6], p. 289.

67), an administrative hearing was conducted before Administrative Law Judge ("ALJ") Michael Carr on February 8, 2017 at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 114-50.

In November 2016, several months prior to the administrative hearing, plaintiff was involved in a motor vehicle accident. In his May 15, 2017 decision, ALJ Carr determined that plaintiff's severe impairments were "lumbar spine (from alleged onset date), cervical spine (from November 2016); and obesity", but determined that her "right shoulder partial thickness tear", asthma, and adjustment disorder with depression were non-severe. Id., pp. 12-13. Based on the record before him, ALJ Carr concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she "can occasionally climb ramps and stairs, balance, stoop, kneel, but cannot climb ladders, ropes, or scaffolds, crouch, or crawl", and "[w]hile at the workstation, needs to alternate to standing for 2 minutes after every 45 minutes of sitting and to sitting for 2 minutes after every 45 minutes of standing or walking". Id., p. 15.

In reaching that determination, ALJ Carr specifically addressed a number of relevant medical opinions, including the May 9, 2014 opinion of Rajiv Jain, M.D., issued shortly after plaintiff's workplace injury, that she should "avoid heavy lifting and work on gradual weight loss program". Id., p. 290. ALJ Carr gave this opinion "little weight", since it was "too vague". Id., p. 18.

In June 2015, spinal surgeon Cameron Huckell, M.D. opined that plaintiff had "suffered significant injuries to the spine as a result of the work related accident". Id., p. 530. With respect to plaintiff's limitations, Dr. Huckell found that plaintiff a "temporary partial disability to a marked degree . . . as a result of the [April 8, 2014] work-related accident", and "should avoid bending, stooping, reaching, twisting, crawling or climbing", "not lift anything

greater than 20 pounds", and "avoid sitting, standing or walking for more than 2 hours at one time without a break and the total work day should not exceed 8 hours". Id., pp. 535-36.[4] ALJ Carr gave this opinion "significant weight". Id., p. 17.

In October 2015 Michael Calabrese, M.D., of Medical Care of WNY, who had been treating plaintiff since her workplace accident, opined that she "can do a light duty job that allows frequent position changes from sitting to standing and does not require any lifting, pushing or pulling in excess of 10 pounds. She cannot bend over to pick up anything from below mid thigh level". Id., p. 388. ALJ Carr also gave this opinion "significant weight". Id., pp. 17-18.

Several of Dr. Calabrese's reports also opined that plaintiff was able to perform sedentary work. *See, e.g.*, Id., pp. 390 (October 2015), 402 (August 2015), 410 (May 2015). In March 2015, Cheryle Hart, M.D., also of Medical Care of WNY, similarly opined that plaintiff was limited to sedentary work. Id., p. 474. ALJ Carr gave these opinions "some weight", since they were "vague and d[id] not account for any non-exertional limitations". Id., p. 18.

In November 2015, plaintiff "self referred" herself to Bernard Beaupin, M.D., "for additional options". Id., p. 418. Dr. Beaupin opined that plaintiff was 75% disabled and was able to lift up to five pounds. Id., p. 421. He also opined that she should "avoid bending, lifting, and twisting", as well as "sitting for more than 2 hours at a time without a break". Id. ALJ Carr

---

[4] Dr. Huckell rendered a similar opinion in January 2015. [6], p. 541. His reports explained that plaintiff's lumbar spine MRIs taken in June 2014 showed "loss of signal at the L2-3 disc level with disc bulge somewhat more sever (*sic*) to the left in the midline, a loss of signal at the L3-4 level with a central and left paracentral focal disc protrusion with mild narrowing of the left neural foramina with a small annular tear that is identified at the posterior anterior annulus, a small central focal annual tear at the L4-5 level along with a disc protrusion with mild narrowing of both neural foramina, and a central L5-S1 disc protrusion that extends somewhat to the left with mild to moderate narrowing of the left neural foramina, all of which can explain the patient's current symptoms". Id., pp. 530, 535. He further opined that "she is considered to be a potential candidate for surgery to address any or all four of the . . . pathologic discs". Id.

-3-

gave this opinion "little weight", because the lifting restriction was "extreme and . . . not consistent with the imaging studies or the physical examinations on file". Id., p. 18.

Because of plaintiff's workers' compensation benefits, the record also contained other opinions as to plaintiff's percentage of temporary disability, ranging from 50% to 100% disabled. Id., p. 18. ALJ Carr gave no weight to those opinions, finding that they were vague and "infringe[d] on a finding reserved for the Commissioner". Id.

Based upon plaintiff's RFC and the vocational expert's testimony, ALJ Carr found that there were significant jobs in the national economy that plaintiff was able to perform. Id., p. 19. Therefore, he concluded that plaintiff was not under a disability from April 8, 2014 through the date of the May 15, 2017 decision. Id., p. 20. The Appeals Council denied plaintiff's request for review (id., pp. 1-5), and thereafter she commenced this action.

## ANALYSIS

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520,

416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

In seeking remand, plaintiff raises several arguments, including that: 1) ALJ Carr relied on the stale opinions of Drs. Huckell and Calabrese rendered in 2015, "prior to [her] later [November 2016] motor vehicle accident and progression of her symptoms"; 2) "there was no substantial evidence for the ALJ's alternating [sitting/standing] formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [she] could perform"; and 3) ALJ Carr's credibility determination was "very limited and the few facts he utilized to support finding Plaintiff less than credible did not match up with cited evidence". Plaintiff's Memorandum of Law [8-1], pp. 21-28.

**B.     Did ALJ Carr Rely on Stale Medical Opinions?**

"[M]edical source opinions that are stale . . . and based on an incomplete medical record may not be substantial evidence". Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd, 652 Fed. App'x 25 (2d Cir. 2016). Generally, "[a] stale medical opinion . . . is not substantial evidence to support an ALJ's finding". Pagano v. Commissioner of Social Security, 2017 WL 4276653, *5 (W.D.N.Y. 2017). However, "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). "Just because the claimant continues treatment after an opinion is rendered, however, does not mean that the

opinion is stale." Palistrant v. Commissioner of Social Security, 2018 WL 4681622, *6 (W.D.N.Y. 2018).

Following the November 2016 motor vehicle accident, plaintiff complained of low back symptoms increasing in severity, as well as neck and right shoulder pain, and was seen by Dr. Hart and Ryan DenHaese, M.D., a neurosurgeon. [6], pp. 544-547, 549-59. Demonstrating the plaintiff's condition deteriorated, Dr. Hart, who previously opined in March 2015 that plaintiff was able to perform sedentary work ([6], p. 474), opined on December 22, 2016, following the motor vehicle accident, that she "has been and remains 100% impaired as a direct result of motor vehicle injuries sustained on 11/10/16" and "unable to work". Id., p. 558.[5] This was consistent with the January 23, 2017 opinion of Tiffany Albakri, also of RES Physical Medicine and Rehab Services. Id., p. 553. Correspondingly, Dr. Hart's assessment of plaintiff's range of motion in her lumbar spine decreased following the November 2016 motor vehicle accident. *Compare* id., p. 472 *with* p. 556.

Plaintiff also sustained a cervical spine injury that resulted in limitations in movement. Id., pp. 544, 555-56. Palpation of the cervical spine by Dr. Hart revealed myospasms, trigger points, and paraspinal muscle tenderness. Id., p. 556. A cervical compression test was also positive. Id. Even ALJ Carr recognized that plaintiff sustained additional injuries to her cervical spine from the car accident by concluding that plaintiff's cervical spine became a severe impairment after the November 2016 accident. Id., p. 12. Yet, he did not rely on any post-accident medical opinion in formulating plaintiff's RFC.

---

[5]   In this interval, Dr. Hart went from working for Medical Care of WNY to working for RES Physical Medicine and Rebab Services.

Moreover, plaintiff sustained a right shoulder injury in the November 2016 accident. Although plaintiff did not sustain a fracture of labral tear, a February 7, 2017 MRI report revealed a "severe sprain and high-grade partial-thickness tear at the posterior edge of the supraspinatus tendon distal to the AC joint. High-grade intrasubstance tear of the distal body of the of the infraspinatus tendon extending into the musculotendinous junction and the tendon of the infraspinatus is noted. Micro-communication cannot be excluded. There is associated joint effusion and subdeltoid bursal fluid." Id., p. 561. Drs. Hart and DenHaese both found decreased strength in plaintiff's upper right extremity. Id., pp. 556, 545. ALJ Carr concluded that plaintiff's right shoulder partial thickness tear was non-severe because there was no evidence that this condition would last for 12 continuous months. Id., p. 13.

Even though ALJ Carr rejected all of the medical opinions assessing plaintiff's level of disability by percentage ([6], p. 18),[6] the variance in Dr. Hart's opinion (from an ability perform sedentary work to the inability to perform *any* work) demonstrates that plaintiff experienced a deterioration following the motor vehicle accident. In support of his argument that no deterioration occurred, the Commissioner contends that Dr. DenHaese "thought Plaintiff's care could be managed conservatively". Commissioner's Brief [12-1], p. 18. However, that mischaracterizes what Dr. DenHaese actually said in his January 2017 report - he stated only that

---

[6] As discussed above, ALJ Carr rejected these opinions because they were vague and infringed on the findings reserved for the Commissioner. [6], p. 18. Although not raised by the plaintiff, there is case law supporting that "[e]ven where a treating source expresses an opinion on an issue reserved to the Commissioner, such as whether a claimant is 'disabled,' the ALJ cannot simply ignore or disregard the treating source's opinion". Goble v. Colvin, 2016 WL 3179901, *5 (W.D.N.Y. 2016)); Dumbleton v. Berryhill, 2018 WL 6250518, *2 (W.D.N.Y. 2018); SSR 96-5P, 1996 WL 374183, *2-3 ("[f]or treating sources, the rules . . . require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us").

"*my hope* is that she can manage her symptoms conservatively *as she does wish to avoid surgery*". [6], p. 545 (emphasis added).

Although the expected duration of plaintiff's limitations following the November 2016 motor vehicle accident may have been unsettled, the deterioration in plaintiff's condition required further development of the record and was not suitable for lay interpretation by ALJ Carr.[7] *See* Cobb v. Colvin, 2017 WL 1034724, *5 (N.D.N.Y. 2017) ("the ALJ's conclusion that any issue related to plaintiff's left carpal tunnel release in January 2014 'would be expected to resolve in less than twelve months' is not based on or supported by the medical evidence of record and, therefore, constitutes the ALJ's own lay opinion about the effects of plaintiff's Carpal Tunnel Syndrome"). Therefore, I conclude the opinions of Drs. Calabrese and Huckell, rendered prior to plaintiff's motor vehicle accident, were stale, and thus could not provide substantial evidence for ALJ Carr's RFC determination. *See* Whitsett v. Berryhill, 2019 WL 156261, *4 (W.D.N.Y. 2019) (opinion rendered prior to a motor vehicle accident was stale).[8]

**C.  Did ALJ Carr Properly Assess Plaintiff's Credibility?**

Plaintiff argues that "the ALJ's credibility assessment was very limited and the few facts he utilized to support finding Plaintiff less than credible did not match up with cited evidence". Plaintiff's Memorandum of Law [8-1], p. 24. In assessing the credibility of a claimant's subjective complaints, the regulations require the ALJ to employ a two-step inquiry.

---

[7]  A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted *or can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A) (emphasis added).

[8]  Because I am remanding for an undated medical opinion, it is unnecessary for me to determine whether ALJ Carr properly assessed plaintiff's need to alternate sitting/standing positions.

*See* Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (Summary Order). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" the alleged symptoms. Id. (*quoting* 20 C.F.R. §404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id. The ALJ must assess the credibility of the claimant's subjective complaints by considering the entire record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

"[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if supported by substantial evidence. Aponte v. Secretary, Department of Health & Human Services of the United States, 728 F.2d 588, 591 (2d Cir. 1984). While "[i]t is the function of the [ALJ], not [the Court] . . . to appraise the credibility of . . . the claimant", Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 642 (2d Cir. 1983), "[t]he ALJ must explain a decision to reject a claimant's testimony with sufficient specificity to enable the reviewing Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence." Quintana v. Colvin, 2017 WL 752187, *13 (S.D.N.Y. 2017). *See also* Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y.

2012) ("[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand [so long as] the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination"). Thus, credibility "findings 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Nix v. Astrue, 2009 WL 3429616, *5 (W.D.N.Y. 2009) (*quoting* Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)); Konidis v. Colvin, 2015 WL 2454004, *7 (W.D.N.Y.), adopted, 2015 WL 2454038 (W.D.N.Y. 2015) ("credibility determinations must contain specific findings based on substantial evidence in order to allow for review"); Gumaer v. Colvin, 2014 WL 701770, *5 (N.D.N.Y. 2014). "A recitation of the evidence, without more, is insufficient to permit th[e] Court to review the ALJ's credibility determination." Spear v. Astrue, 2014 WL 4924015, *20 (W.D.N.Y. 2014).

Here, ALJ Carr found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extend they can reasonably be accepted as consistent with the objective medical and other evidence" [6], p. 16.

ALJ Carr's conclusory credibility determination lacks any specific explanation as to why plaintiff's subjective complaints concerning the intensity and persistence of her back limitations are not supported by the record. *See* Konidis, 2015 WL 2454004, *7 ("the ALJ merely presented the recitation of the medical record without stating the specific inconsistency of

that record to plaintiff's stated complaints to justify questioning her credibility"); Spear, 2014 WL 4924015, *20.

Although plaintiff takes issue with ALJ Carr's findings concerning her ability to participate in church and to watch her niece on a daily basis, those findings were made in the context of ALJ Carr's determination as to whether plaintiff's adjustment disorder with depression constituted a severe impairment, not whether her subjective physical limitations were credible. *See* [6], p. 13.

In any event, without further explanation from ALJ Carr, those activities, standing alone, are not sufficient to dispel plaintiff's subjective limitations. For example, while ALJ Carr focused on plaintiff's statement that she was active in church (id., p. 507), he ignored her statements she was no longer able to sing in the church choir because of her inability to stand long enough, which is entirely consistent with her subjective limitations. Id., pp. 310, 337. Likewise, while the record contains an isolated reference to plaintiff watching her niece (id., p. 507), without more information (*e.g.*, age of the child, duration of the babysitting, assistance from others), it is difficult to discern whether that activity is inconsistent with her subjective complaints or establishes that she is capable of performing sedentary work on a sustained basis. *See* Starzynski v. Colvin, 2016 WL 6956404, *4 (W.D.N.Y. 2016) ("[c]ourts in this Circuit consistently have observed that a claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job"); Vasquez v. Barnhart, 2004 WL 725322, *11 (E.D.N.Y. 2004) ("[u]nder the law of the Second Circuit a finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining

employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job'"). More is required.

Based on ALJ Carr's conclusory assessment of plaintiff's credibility, I am unable to determine whether ALJ Carr's credibility determination is supported by substantial evidence. *See* Gorman v. Colvin, 2014 WL 537568, *9 (E.D.N.Y. 2014); Jaeckel v. Colvin, 2015 WL 5316335, *11 (E.D.N.Y. 2015) (remanding where the ALJ "failed to properly consider the factors in 20 C.F.R. § 404.1529(c)(3) other than activities of daily living with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence"). Therefore, remand is also necessary on this basis.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Commissioner's motion [12] is denied.

**SO ORDERED**.

Dated: September 24, 2019

    /s/ Jeremiah J. McCarthy
    JEREMIAH J. MCCARTHY
    United States Magistrate Judge